**Jean-Claude PORSON, Appellant,**

v.

**Vladimir POJIDAEFF, Appellee.**

**Alvaro F. GALVAN and Jean-Claude Porson, Appellants,**

v.

**Vladimir POJIDAEFF, Appellee.**

**Nos. 21265, 21266.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 16, 1970.

Decided Nov. 13, 1970.

Mr. George P. Lamb, Jr., Washington, D. C., with whom Mr. Byron N. Scott, Washington, D. C., was on the brief, for appellants. Mr. Van A. Stilley, Washington, D. C., also entered an appearance for appellants.

Mr. Mark P. Friedlander, Washington, D. C., for appellee. Messrs. Mark P. Friedlander, Jr., Blaine P. Friedlander, Harry P. Friedlander, and Marshall H. Brooks, Washington, D. C., entered appearances for appellee.

Before TAMM, and MacKINNON, Circuit Judges, and NICHOLS,* Judge, U. S. Court of Claims.

PER CURIAM:

These consolidated appeals grow out of complaints in libel filed in the District Court by appellee Pojidaeff against appellants Porson and Galvan. The consolidated cases were tried to a jury which returned verdicts against Porson in one case in the amount of one thousand dollars and against Porson and Galvan in a second case in the amount of four thousand dollars, both of which verdicts are appealed to us. A third verdict has not been appealed.

The three present litigants are freelance interpreters who act as chief interpreters at conferences and compete with each other for assignments. In their professional capacity as chief interpret-

---

* Sitting by designation pursuant to Title 28, U.S.Code, Section 293(a).

ers, they not only receive a higher per diem compensation than interpreters but also receive additional compensation for recruiting interpreters and for organizing the conduct of conferences. (Defendants' Exhibit 9, App. 149–150.) Both appellants and appellee are or were members of a regional professional organization and Galvan and Pojidaeff were members of an international professional organization. Pojidaeff was an officer of both groups during the time period pertinent to this controversy.

Friction developed within the regional organization, and in the internecine controversy appellants were opposed to appellee. Ultimately appellants withdrew from the group and with others organized a new association of interpreters. Out of the melee there emerged a series of letters written by Porson, a letter in which Porson and Galvan participated as directors of the new professional group, and also a "Statement" drafted by them. It is upon the contents of these documents that the present libel actions were initiated by Pojidaeff. Before us appellants challenge the trial judge's action in permitting the combined cases to go to the jury, the adequacy of the evidence and a section of the trial court's charge to the jury. They also assert the establishment of their defense of truth as a matter of law. After a complete study of the entire record, we affirm the District Court's verdicts.

It is our conclusion that plaintiff's exhibits 7, 8, and 9, (App. 63–72), created relevant factual questions which required submission to the jury. Without extensive discussion we cite excerpts from the exhibits which we hold require this conclusion.

Exhibit 7 quotes the provision of the International Association of Conference Interpreters' (hereinafter AIIC) Code of Professional Conduct which requires that members abstain from all forms of personal publicity, and then charges that Pojidaeff engaged in "a direct mail publicity campaign" in which he offered "his services" through a "letter of solicitation," and concludes that this activity is "professionally unethical." On the other hand, Pojidaeff's letter (Plaintiff's Exhibit 9) says that he is "merely writing * * * on behalf of my colleagues, the professional international conference interpreters" and that "all of my colleagues have had thorough experience in a wide variety of technical fields." Thus, there is at least arguably a factual question as to whether this letter would be understood as being personal publicity. More significantly, Pojidaeff's letter states that "[t]he rates and conditions applied are those of the International Association of Conference Interpreters." This statement is alluded to in plaintiff's exhibit 7, which concludes with the assertion that "the above mentioned representations * * [are] factually wrong." Exhibit 8 goes into somewhat more detail on this point:

> The American Society of Interpreters also wishes to point out that statements, according to which his rates are those of the U.S. Department of State or those of the International Association of Conference Interpreters, are misleading in that the approximate difference in the North American Continent between his own and theirs has been of the order of two to one.

█ There was a considerable amount of testimony on the matter of rates (*see, e. g.,* Tr. 157–164, 326–333), and it is clear that this aspect weighed heavily with the trial judge in his decision denying the motion for directed verdict in these cases:

> The Court: Now, Mr. Pojidaeff in his letter said they are the same as AIIC's and the same as the State Department [*sic*]. In the letter of the 24th they say but the truth of the matter is his statements that his rates are the same as AIIC and the State Department are factually wrong and professional [*sic*] unethical, and if they are factually wrong certainly it is professionally unethical.

And then in Exhibit 8 they say that instead of being the same his rates are almost two times as great, or as high, or as much as AIIC and the State Department rates, and when you figure his rates at $75 for interpreters and $100 for him, plus $250 and up organizing fees, then his rates are much greater than two to one over AIIC and the State Department.

(Tr. 599–600.) Upon the basis of these documents alone we conclude that the trial court was precluded from directing a verdict for the appellants.

█ Appellants raise one other issue which appears of sufficient substance to justify comment and that is the refusal of the trial court to instruct the jury on the defense of fair comment. Our review of the entire record convinces us that the trial court's ruling in this regard was correct. We have reviewed the entire charge as it was given to the jury and are satisfied that it comports substantially with the so-called "standard" and customarily approved charges in this area. We note further in this regard that appellants' counsel stipulated his satisfaction with the instructions as given before the jury retired to deliberate. (Tr. 676.)

Affirmed.

NICHOLS, Judge (concurring in part, dissenting in part):

It is important to note that Civil Action No. 1671–65 is distinct from the other cases in this appeal. Though consolidated with the others for trial, the jury made a separate award of $1,000 therein. I concur in the court's disposition of that case.

Nos. 1669–65 and 2554–65 are one lawsuit; No. 2554–65 was brought in Virginia because defendant Metzger could only be served there, and later it was transferred here. The same complaint serves for both and the verdict in both finds for Metzger but awards $4,000 against defendants Porson and Galvan. I would reverse in that case.

The complaint in 1669–65 and 2554–65 sets forth as libelous the letters identified as plaintiff's exhibits 7 and 8. If they are not actionable libels, that action must fail. Both refer to appellee Pojidaeff's letter, plaintiff's exhibit 9, and it is necessary to refer to exhibit 9 to understand them. In exhibit 9 (a circular), Mr. Pojidaeff wrote that he was not representing any commercial organization or acting as private "entrepreneur" but was writing on behalf of his colleagues, the professional international conference interpreters of the Western Hemisphere. (They are, as I understand, the persons who deliver simultaneous translations of speeches, which those who do not understand the speaker's language can pick up through headphones.) He said their rates were those of the International Association, that the members were well-known to the United Nations, the Department of State, and other named international organizations, and that they had experience in a variety of technical fields. He enclosed a list of conferences which used his services "as chief interpreter to organize their interpretation services." He wanted to be told the plans (of future conferences) because the international conference interpreters had to be engaged well in advance. In a P.S. he said that if the addressees wanted further information "about myself" they could contact two named officials, of the United Nations and State Department, respectively.

Mr. Pojidaeff was President of an American association of interpreters and Vice-President of an international organization, in the same field, having headquarters in Paris.

Exhibit 7 is addressed to the Paris organization. It asserts that exhibit 9 constitutes an unethical direct mail solicitation to secure personal employment. Exhibit 8 says that no one is authorized to solicit employment on behalf of members of the organization in whose name exhibit 8 was sent. Both exhibits further take issue with Mr. Pojidaeff's

statements about rates, asserting that the rates he said were the same actually varied on the order of two to one. The key words "factually wrong and professionally unethical" occur in exhibit 7, not 8.

I suggest that it is difficult to libel a person in the course of commenting not on him but on something he has written, without purporting to derive derogatory information from any other source. A reader of exhibit 7 who did not have exhibit 9 before him would not know what exhibit 7 was all about. If he did, he would see that the alleged direct mail publicity campaign was, solely and simply, exhibit 9. Exhibit 7 really says that exhibit 9 shows the writer of exhibit 9 to have acted unethically in circulating exhibit 9. The reader of exhibit 7 could look at exhibit 9 and form his own conclusion. He could easily reach defendant's conclusion. As I read Sullivan v. Meyer, 78 U.S.App.D.C. 367, 141 F.2d 21 (D.C.Cir.1944), cert. denied, 322 U.S. 743, 64 S.Ct. 1145, 88 L.Ed. 1575 (1944), a directed verdict would have been proper.

All that there is besides, of libel, is the denial in exhibits 7 and 8 of Mr. Pojidaeff's allegations in exhibit 9 as to rate structure for conference coverage. It is clear that the allegations of unethical behavior, in context, refer to the solicitation of business, not the rates. Nothing appeared to show it was infamous of Mr. Pojidaeff to charge whatever the traffic would bear. I do not think a denial of a person's fact statement is libelous merely because adverse conclusions as to the person's veracity might be drawn if the denial was believed. To say a statement is "factually wrong" does not charge its maker with being a deliberate liar, which is of course libelous.

Thus I do not see any libel to put before the jury in Nos. 1669–65 and 2554–65. I think the jury was allowed to take sides in what was essentially a business quarrel in which the law should not have intervened. My respectful dissent should not be construed, however, as challenging the result in No. 1671–65, in which the alleged libels were different.